**UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN RE:

COST LESS DISTRIBUTING, INC.                    Case No. 24-31912

  Debtor.                                                            Chapter 11

_____/              Judge: Joel D. Applebaum

**FIRST AMENDED PLAN OF REORGANIZATION FOR DEBTOR UNDER
SUBCHAPTER V OF CHAPTER 11
OF THE BANKRUPTCY CODE**

Cost Less Distributing, Inc. ("Cost Less."), Debtor and Debtor in Possession in the above captioned case, by and through their counsel, Simen, Figura and Parker, P.L.C. ("SFP") hereby submit Cost Less Distributing, Inc.'s *First Amended Plan of Reorganization for Debtor Under Subchapter V of Chapter 11 of the Bankruptcy Code* (the "Plan") as follows:

**ARTICLE I DEFINITIONS,
RULES OF
INTERPRETATION AND COMPUTATION OF TIME**

**1.1     Scope of Definitions.**

For purposes of this Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined have the meanings given them in Section 1.2 of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given that term in the Bankruptcy Code or the Bankruptcy Rules.

**1.2     Definitions.**

**1.2.1     "Administrative Claim"** means certain Claims for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(2) and (3) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the businesses of Debtor, including wages, salaries, commissions for services rendered after the Petition Date, Professional Claims, taxes accruing after the Petition Date, whether or not the last payment date is before or after the Confirmation Date, any actual indebtedness or obligations incurred or assumed by the

1

Debtor during the pendency of this Chapter 11 Case in connection with conducting the Debtor' businesses, any actual expenses necessary or appropriate to facilitate or effectuate the Plan, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under Section 546(c) of the Bankruptcy Code, provided, however, that this term does not include any portion of Allowed Secured Claims, whether or not all or part of any Allowed Secured Claim is entitled to priority under Sections 503(b), 507, 363, or 364 of the Bankruptcy Code or otherwise.

1.2.2   "**Administrative Claims Bar Date**" means the deadline for filing proofs of or requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims, which shall be thirty (30) days after the Effective Date, except as otherwise specifically set forth in the Plan or a Final Order.

1.2.3   "**Administrative Claims Objection Bar Date**" means the deadline for filing objections to requests of payment of Allowed Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be the first Business Day that is one hundred eighty (180) days following the Effective Date; provided that the Administrative Claims Objection Bar Date may be extended by order of the Bankruptcy Court.

1.2.4   "**Affiliates**" has the meaning given it by Section 101(2) of the Bankruptcy Code.

1.2.5   "**Allowed**" means, when used in reference to a Claim or Interest within a particular Class, an Allowed Claim or Allowed Interest of the type described in the Class.

1.2.6   "**Allowed Claim**" means a Claim or any portion of the Claim

a.      that has been Allowed by a Final Order of the Bankruptcy Court (or such other court or forum with jurisdiction to adjudicate the Claim and objections to it);

b.      as to which a Proof of Claim has been timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, but only to the extent that the Claim is identified in the Proof of Claim in a liquidated and noncontingent amount, and either (i) no objection to its allowance has been Filed within the periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied or overruled by a Final Order;

c.      as to which no Proof of Claim has been Filed with the Bankruptcy Court and (i) which is Scheduled as liquidated in an amount other than zero

2

and not contingent or disputed, but solely to the extent of the liquidated amount and (ii) no objection to its allowance has been Filed by Debtor, within the periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court

1.2.7 "**Allowed Interest**" means an ownership interest in any Debtor, which has been listed by such Debtor in its Schedules and related documents as liquidated in an amount and not disputed or contingent; provided however, that proofs of Interest need not be Filed in the Bankruptcy Court with respect to any Interests; and provided further, however, that Debtor, in their discretion, may bring an objection or motion with respect to a Disputed Interest before the Bankruptcy Court for resolution.

1.2.8 "**Avoidance Claims**" means Causes of Action or defenses arising under any of Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute the Causes of Action, including, but not limited to, any claims of any Affiliates and Insiders.

1.2.9 "**Ballot**" means the official bankruptcy form 314 adopted for this Chapter 11 Case or a document prepared to substantially conform to same which is distributed with the Plan to Holders of Claims and Interests in connection with the solicitation of votes for or against the Plan.

1.2.10 "**Bankruptcy Code**" means Title 11 of the United States Code (11 U.S.C. §§ 101, et. seq.), as in effect on the Petition Date or as may be amended (to the extent any such amendments are made applicable to the Chapter 11 Case.

1.2.11 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District Michigan, or such other court that may have jurisdiction over the Chapter 11 Case.

1.2.12 "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings in the Chapter 11 Case, and the Local Rules of the Bankruptcy Court.

1.2.13 "**Bar Date**" means the deadlines set, or to be set, if any, by the Bankruptcy Court for filing proofs of claim in the Chapter 11 Case, or otherwise asserting any Claim against any Debtor, or, if no such deadline is set, as provided for by the Bankruptcy Rules.

1.2.14 "**Beneficiaries**" means all Creditors of the Debtor with Claims treated under Articles III or IV of this Plan.

1.2.15 "**Business Day**" means any day, excluding Saturdays, Sundays, and

3

"legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Detroit, Michigan.

1.2.16 "**Cost Less Distributing, Inc.**" means the Debtor Cost Less Distributing, Inc., a Michigan corporation incorporated in 2020, Case No. 24-31912.

1.2.17 "**Cash**" means legal tender of the United States of America and equivalents thereof.

1.2.18 "**Causes of Action**" means any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, claims, and rights of appeal, whether known, unknown, pending, not pending, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertible directly or derivatively in law, equity, or otherwise, including Avoidance Claims, unless otherwise waived or released by Debtor to the extent the Cause of Action is a Cause of Action held by any of the Debtor, including, but not limited to, any claims against any Affiliates and Insiders.

1.2.19 "**Chapter 11 Case(s)**" or "**Case(s)**" means this Subchapter V of Chapter 11 Case No 24-31912-jda currently pending in the United States Bankruptcy Court for the Eastern District of Michigan.

1.2.20 "**Claim**" means a claim against Debtor, or any one of them, whether or not asserted, as defined in § 101(5) of the Bankruptcy Code.

1.2.21 "**Claimant**" means any individual or entity which has a valid Claim as defined herein.

1.2.22 "**Class**" means a category of Holders of Claims or Interests as described in Article IV of this Plan.

1.2.23 "**Client Trust Account**" means the Simen, Figura and Parker P.L.C. IOLTA (client trust) account.

1.2.24 "**Confirmation**" means the entry of a Confirmation Order on the docket of the Chapter 11 Case.

1.2.25 "**Confirmation Date**" means the date of entry of the Confirmation Order.

1.2.26 "**Confirmation Hearing**" means the hearing before the Bankruptcy Court held under Section 1128 of the Bankruptcy Code to consider Confirmation of this

4

Plan and related matters, as may be adjourned or continued from time to time.

1.2.27 "**Confirmation Objection Deadline**" means the deadline set for filing objections to confirmation of the Plan. Presently, the Confirmation Objection Deadline is April 18, 2025, as set forth in the Court's *oral ruling on February 26, 2025*, unless said deadline is modified by the Bankruptcy Court.

1.2.28 "**Confirmation Order**" means the order entered by the Bankruptcy Court confirming this Plan under Section 1191 of the Bankruptcy Code.

1.2.29 "**Creditor**" means any creditor of Debtor, or any one of them, as defined in Section 101(10) of the Bankruptcy Code.

1.2.30 "**Cure Claim**" means the Claim of a party to an executory contract with Debtor whose contract has been assumed by the Debtor for any amount which may be required to cure a pre-petition default.

1.2.31 "**Debtor**" means Cost Less Distributing, Inc.

1.2.32 "**Disallowed Claim**" means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.

1.2.33 "**Disputed Claim**" or "**Disputed Interest**" means a Claim or any portion thereof, or an Interest or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, nor an Allowed Interest nor a Disallowed Interest.

1.2.34 "**Effective Date**" means the first Business Day after the Confirmation Order becomes a Final Order.

1.2.35 "**Entity**" has the meaning set forth at Section 101(15) of the Bankruptcy Code.

1.2.36 "**Estate**" means the bankruptcy estates of Debtor, or of any particular Debtor, as the context requires, created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

5

1.2.37 "**Exhibit**" means any exhibit or schedule attached to this Plan or incorporated by reference to the Plan, including any amendments and supplemental exhibits or schedules that may be filed subsequent to filing of the Plan.

1.2.38 "**File**" means to file with the Bankruptcy Court in the Chapter 11 Case or such other court with jurisdiction over the relevant subject matter.

1.2.39 "**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022.

1.2.40 "**Final Order**" means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request re-argument or further review or rehearing has expired and no appeal, petition for certiorari, or request for re-argument or further review or rehearing has been timely Filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for re-argument or further review or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for re-argument or further review or rehearing has been or can be taken or granted.

1.2.41 "**General Unsecured Claim**" means any Claim that is not otherwise an Administrative Claim, Professional Fee Claim, Priority Tax Claim, Priority Claim, or Secured Claim.

1.2.42 "**General Unsecured Claim Payment**" means the payment, if Reorganized Debtor has sufficient funds, to be made to Holders of General Unsecured Claims as set forth in Sections 4.4, 4.10 and 4.15.

1.2.43 "**Governmental Unit**" has the meaning set forth at Section 101(27) of the Bankruptcy Code.

1.2.44 "**Holder**" means a Person holding a Claim, Interest, or Lien.

1.2.45 "**Impaired**" refers to any Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.2.46 "**Insider**" has the meaning set forth at Section 101(31) of the Bankruptcy Code.

1.2.47 "**Interest**" means the legal, equitable, contractual, and other rights of any Person with respect to equity securities of, or ownership interests in any of the Debtor.

1.2.48 "**Interest Rate**" means, with respect to Claims entitled to interest under the Bankruptcy Code and this Plan, the interest being paid or earned on a five-year Treasury Note as published by the Wall Street Journal on the Effective Date, or such other interest rate as may be determined by a Final Order of the Bankruptcy Court.

1.2.49 "**IRC**" means the Internal Revenue Code of 1986, as amended.

1.2.50 "**IRS**" means the Internal Revenue Service.

1.2.51 "**Lien**" has the meaning set forth at Section 101(37) of the Bankruptcy Code.

1.2.52 "**Person**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

1.2.53 "**Petition Date**" means October 7, 2024, the date Debtor Cost Less Distributing, Inc. filed its petition for relief in the Bankruptcy Court commencing the Chapter 11 case.

1.2.54 "**Plan**" means this plan for the resolution of outstanding Claims and Interests in the Chapter 11 Cases, including all Exhibits, supplements, appendices, and schedules, either in its present form or as it may be altered, amended or modified in accordance with the Bankruptcy Code and Bankruptcy Rules.

1.2.55 "**Plan Proponent**" means the Debtor.

1.2.56 "**Priority Claim**" means any Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code.

1.2.57 "**Priority Tax Claim**" means a Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.2.58 "**Proof of Claim**" means a proof of Claim Filed against any of the Debtor in the Chapter 11 Case.

1.2.59 "**Property of the Estate**" has the meaning set forth in Sections 541 and 1186 of the Bankruptcy Code.

1.2.60 "**Pro Rata**" means with respect to Claims, at any time, the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise in such Class or Classes.

1.2.61 "**Professional**" means any Person retained in the Chapter 11 Case by Bankruptcy Court order pursuant to Sections 327 of the Bankruptcy Code or otherwise, and the Subchapter V Trustee.

1.2.62 "**Professional Fee Claim**" means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and before and including the Effective Date.

1.2.63 "**Projected Disposable Income**" means each Debtor' projected disposable income for the first five (5) years after the Effective Date, which, as demonstrated in the financial projections attached as **Exhibit B**.

1.2.64 "**Related Parties**" means, with respect to any Person or Entity, such Person's or Entity's direct and indirect current and former Affiliates, subsidiaries, partners (including general partners, and limited partners), investors, managing members, members, officers, directors, principals, employees, managers, controlling persons, guarantors, agents, attorneys, Professionals, advisors and representative, each in their capacity as such.

contained in the Plan by checking the opt out box on the ballot and timely returning it in accordance with the instructions set forth therein, or (iv) is deemed to have rejected the Plan and does not opt out of the release contained in the Plan; and (b) the Related Parties of the foregoing.

1.2.65 "**Reorganized Debtor**" means the Debtor, or any one of them, from and after the Effective Date.

1.2.66 "**Retained Actions**" means all Claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or Debtor's Estate may hold against any Person, including, without limitation, Claims and Causes of Action brought before the Effective Date or identified in the Schedules or Disclosure Statement, other than Claims explicitly released under this Plan or by Final Order of the Bankruptcy Court before the date of this Plan.

1.2.67 "**Scheduled**" means, with respect to any Claim, the status, priority and amount, if any, of such Claim as set forth in the Schedules.

1.2.68 "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs Filed in the Chapter 11 Case by each Debtor.

1.2.69 "**Secured Claim**" means a Claim secured by a security interest in or a lien on property in which a Debtor's Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by a Final Order of the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to Section 553 of the Bankruptcy Code, or as otherwise agreed upon in writing by a Debtor and the Holder of such Claim.

1.2.70 "**Security**" has the meaning set forth at Section 101(49) of the Bankruptcy Code.

1.2.71 "**Subchapter V**" refers to Sections 1181 through 1195 of the Bankruptcy Code.

1.2.72 "**Subchapter V Trustee**" means Kimberly Ross Clayson, the trustee appointed in the Chapter 11 Case pursuant to Section 1183 of the Bankruptcy Code.

1.2.73 "**Unimpaired**" means, with respect to a Claim or class of Claims, any Claim treated under this Plan that leaves unaltered the legal, equitable, and contractual rights of such Claim.

1.2.74 "**Unsecured Claim**" means a Claim that is neither a Secured Claim, Administrative Claim, or Priority Claim.

1.2.75 "**Voting Deadline**" means the deadline set for the receipt of Ballots by Debtor or Debtor' agent as set by the Bankruptcy Court. Presently, the Voting Deadline is February 10, 2025 as set forth in the Court's *Order Establishing Deadlines and Procedures in the Case of a Small Business Debtor who has Elected to have Subchapter V of Chapter 11 Apply*, unless said deadline is modified by Order of the Bankruptcy Court.

**1.3** **Rules Of Interpretation:** For purposes of this Plan, unless otherwise provided herein:

1.3.1 Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, includes both the singular and the plural.

1.3.2 Each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine and neuter.

1.3.3 Any reference in this Plan to an existing document or schedule Filed or to be Filed means the document or schedule, as it may have been or may be amended, modified or supplemented. Except as otherwise ordered by the Bankruptcy Court, all Exhibits, as amended, modified or supplemented, are incorporated by reference into this Plan for all purposes.

1.3.4 Any reference to an Entity or Person as a Holder of a Claim or Interest includes that Entity's or Person's successors and assigns. Any reference to a Debtor includes the Reorganized Debtor for all periods after the Effective Date.

1.3.5 Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular

terms and conditions means that the document shall be substantially on such terms and conditions.

       1.3.6    The words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan.

       1.3.7    Subject to the provisions of any contract, certificates of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. To the extent that reference to state law is required, the Plan is governed by the substantive law of Michigan, without giving effect to it conflict of laws principles.

    **1.4**    **Computation of Time.**  In computing any period of time prescribed or allowed by this Plan, unless otherwise **expressly** provided, the provisions of Bankruptcy Rule 9006 apply. Whenever any action is required to be performed or a deadline expires on a specific date, if the date falls on a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006), the action may be performed, or the deadline will expire, on the next day that is not a Saturday, Sunday or legal holiday.

    **1.5**    **References to Monetary Figures**. All references in this Plan to monetary figures refer to currency of the United States of America.

    **1.6**    **Exhibits**. All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not attached to this Plan, the Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours (subject to current COVID-19 restrictions) or at the Bankruptcy Court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from Debtor' counsel. **All Exhibits may be revised before the Confirmation Date by the filing of the revised Exhibits with the Bankruptcy Court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan.** The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court will constitute an approval of the Exhibits.

    **1.7**    **No Admissions; Estimates of Claims**. Unless expressly stated otherwise, nothing herein will be deemed to be an admission by Debtor or to otherwise prejudice Debtor in any Claim objection or Cause of Action. All estimates of Causes of Action and Claim amounts listed in this Plan and Exhibits are current estimates only. All Claim amounts and classifications remain subject to the Claim objection process as set forth in Article VIII.

# ARTICLE II

## BACKGROUND

**2.1**     **Description and History of the Debtor' Businesses.**

Cost Less is a Michigan corporation whose shareholders are Timothy Green and Matthew Ovadek. The company sells pet treats and related products to independent pet stores. Cost Less was incorporated in July, 2020 by Timothy Green. It began slowly, working just with independent convenience and some grocery stores in Michigan. Over time Cost Less began expanding into pet stores though there is tough competition in that market. To break into the pet store market Cost Less initially had to attend trade shows and aggressively discount its product, which impacted profitability negatively. Over time Cost Less has developed customers in the independent pet store, and no longer steeply discounts its prices. Cost Less also hired Steve Dunnegan as an independent contractor/sales person who has assisted greatly with improving profitability.

**2.2.**     **Events Leading to the Filing of these Cases.**

This case was filed due largely to pre-bankruptcy state court litigation pending in the Genesee Count Circuit Court. Cost Less received defective, bug-infested product from a company called FN USA Inc. The lack saleable inventory led to delays in shipping and damaged customer relationships. A dispute over what amount was due to FN resulted in litigation before the Genesee County Circuit Court, in which FN USA was ultimately awarded a judgment in the amount of $346,355.33. That judgment resulted in the issuance of an order to seize property and the company's warehouse be padlocked and inventory seized. After being unable to resolve this matter and facing liquidation, Debtor filed this case on October 7, 2024.

**2.3**     **Events of Significance Relevant to and/or since the Filing of the Chapter 11.**

**2.3.1.**  Business Activities. Prior to the filing Cost Less was struggled to meet its expenses from operating revenue, leading to a reliance on "Merchant Cash Advance" loans. Mr. Green and Mr. Ovadek have worked diligently and successfully both in terms of costs and revenues to generate a consistent operating profit, which can be seen from the operating reports filed in this case. The company has certain costs that are largely fixed or proportional to sales such as wages, commissions, utilities, insurance, shipping etc. As sales increase the potential to operate at a positive level of cash improves.  Gross sales in 2024 were 4,984,698.87, an increase over 2023 when the gross revenues were $4,792,249.

12

2.3.2. <u>Accounting/Business Changes.</u> Debtor has improved its business no longer aggressively discounting its prices and securing large new customers for more stable sales. It has also found new suppliers offering better cost structures.

## 2.4. <u>Assets and Liabilities.</u>

2.4.1.<u>Liquidation Analysis</u> Debtor' liquidation analysis is attached as **<u>Exhibit A</u>**

     a.     All values stated in the Liquidation Analysis for assets, liabilities, costs, expenses and potential recoveries are based on good faith estimates using information currently available to Debtor. The estimates have not been audited and a formal appraisal has not been performed. Cash on hand will change as the Debtor continue to operate until Confirmation. All valuations are necessarily estimates and actual results may result in higher or lower recoveries.

     b.     Unless otherwise noted, Debtor has used the liabilities set forth in the Proofs of Claims and Schedules. These amounts are subject to adjustment and objections by Debtor.

     c.     Costs of liquidation are estimates.

     d.     The estimates and values shall not be construed to constitute binding guaranties, representations, or admissions and they are not warrantied in any way. They are subject to revision at any time.

     e.     Avoidance Actions are not included in the liquidation analysis. Although, as set forth herein, the Debtor has not engaged in an analysis of such Causes of Action, Debtor believe that recipients of funds which could be recoverable in connection with Avoidance Actions would have defenses that would make significant recovery unlikely.

     f.     Debtor has assumed a hypothetical conversion date of July 1, 2025.

     g.     The cessation of Debtor' business in a Chapter 7 liquidation is likely to trigger certain claims which would not otherwise exist under the proposed Plan. Examples of such claims include, but are not limited to, tax liabilities, employee claims, a motion for relief seeking mortgage foreclosure etc. While some of these claims could be significant, no adjustment has been made for these potential claims unless specified in the

Liquidation Analysis.

        h.    The Liquidation Analysis assumes that a Chapter 7 Trustee will attempt to sell assets as quickly as possible. Adjustments to the value of certain assets have been made to account for this.

        i.    The Liquidation Analysis assumes that a Chapter 7 Trustee will retain professionals to perform certain duties in connection with the cases. It is assumed that existing professionals would be replaced with new professionals selected by the Chapter 7 Trustee.

        j.    The value of certain Causes of Action held by Debtor are listed as unknown, but are mainly general accounts receivable incurred in the ordinary course of business and two issues with customers with unknown collectability.

### 2.4.3 Debtor' Conclusions

As shown in Exhibit A and herein, the Debtor believe that a liquidation of the Debtor' assets under Chapter 7 of the bankruptcy code would result in a significant reduction in the value to be realized by creditors as compared to the distributions contemplated under the Plan. Accordingly, the Debtor believe that confirmation of the Plan will provide a significantly greater return as compared to a liquidation.

### **2.5.**    **Ability to make future plan payments and operate without further reorganization.**

Cost Less Distributing, Inc. must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. In support of this requirement, Cost Less Distributing, Inc. has provided projected financial information as **Exhibit** B.

Cost Less Distributing, Inc.'s financial projections have been revised to address the U.S. Trustee's objection and show that the Debtor will have projected disposable income (as defined by §1191(d) of the Bankruptcy Code) for the period described in §1191(c)(2) of approximately $25,000.00 per month initially. Debtor would also note that the principals – Timothy Green and Matthew Ovadek – work fulltime in the business and are being paid relatively modest salaries, but have historically and will continue prioritize paying Cost Less's operating expenses and plan obligations over the Debtor's obligations to its principals. The final Plan payment is expected to be paid on or about May 31, 2029 (the date may vary based on the date of confirmation, but in any case will be 60 months following the initial payment which date is based on the date of confirmation). These projections are based on Debtor's principals' experience with operating the business both prior to and during the pendency of the filing. Debtor will acknowledge that the projections do not precisely align

14

with the proposed payments and in some cases exceed or are less than those payments, but Debtor notes that future performance in business is always subject to unforeseeable factors and contingencies.

### 2.6. Identification of all potential avoidance actions and causes of action, including against insiders.

Cost Less Distributing, Inc. has not undertaken a detailed analysis of what Causes of Acton it may have under Chapter 5 of the Bankruptcy Code and the potential defenses thereto, but believes that they are not of significant value to the estate.

That said, Cost Less Distributing, Inc. reserves the right to collect all accounts receivable and all other amounts due Debtor for any reason whatsoever (whether owed to Debtor pursuant to contract rights, quasi contract, tort law, refund rights, deposits, or for any other reason). The Debtor reserves all setoff and recoupment rights of all kinds. The Debtor reserve the right to commence avoidance actions pursuant to 11 U.S.C. §§ 544, 545, 547, 548, 549 and 550 (the "Avoidance Claims"). Accordingly, the Debtor may have potential causes of action and reserve their right to bring a lawsuit against any entity listed on Debtor' Schedules (as filed with the Bankruptcy Court) as owing a debt to the Debtor, and any entity listed on their Statement of Financial Affairs (as filed with the Bankruptcy Court) as having received a transfer from the Debtor. More specifically, and without waiving any other claim, the Debtor may seek to avoid from any direct or indirect transferee, (i) under § 547 of the Code, any transfer of an interest of the Debtor in property which occurred within 90 days of the Petition Date, or, for insiders of the Debtor, within one year of the Petition Date; (ii) under § 544(a) and 545, any liens asserted against the Debtor, (iii) under §§ 544(b) and 548, any actual or constructive fraudulent transfers or obligations, and (iv) under § 549, any unauthorized post-petition transactions.

In addition, Cost Less Distributing, Inc. reserves the right to collect and pursue all Causes of Action arising before or after the Petition Date against any and all Persons with which the Debtor have contractual, trade or account relations, including all Causes of Action relating to breaches of contract, collection of accounts receivable, breach of warranties or representations, supply of non-conforming or deficient goods or services, overpayments, credits, setoffs, demands for turnover of property, and any other Causes of Action that the Debtor may have arising under applicable state or federal law of any nature whatsoever. Debtor would note that there are pending challenges to "Merchant Cash Advance" ("MCA") loans, including a lawsuit filed by the New York State Attorney General, and that should any Court or regulatory authority deem one or more of the three MCA loans that Debtor took out to be invalid in whole or in part Debtor reserves right to seek to modify this plan as to its treatment of such loans to extent any decision impacts the loans present in this case. Further, the Debtor reserve the right to collect and pursue all Causes of Action arising before or after the Petition Date against any and all Persons who may have owed a duty to Debtor, breached a contract with the Debtor, or who may be liable to Debtor under

15

applicable state or federal law of any nature whatsoever as a direct or indirect result of the Persons' actions which interfered with Debtor' business activities

For the avoidance of doubt, Debtor does not limit the scope of the Causes of Action they retain and may pursue to those claims which may be held by Debtor. Debtor under the Plan and the Reorganized Debtor retain discretion to litigate, settle or abandon any Causes of Action, including Avoidance Claims.

### 2.7. <u>Priority claims and anticipated administrative claims.</u>

The Claims listed herein are for description purposes only and not an admission by the Debtor or any other person. The Debtor reserve the right to contest the amount of any Claim, or the priority or extent thereof.

While it is impossible to accurately estimate administrative expenses as of the date of filing the Plan as such estimate depends on various unknown factors, including the total duration of the Chapter 11 Case and the nature and extent of additional administrative expenses, including professional expenses.

As of the date of filing the Plan, the Debtor are not aware of any Priority Claims. The Debtor reserve the right to contest the amount and priority of any other Priority Claim filed in this Chapter 11 Case and nothing in the Plan shall be deemed an admission by the Debtor.

The Debtor anticipate the following Administrative Claims:

| Claimant | Estimated Amount | Priority/Administrative |
|---|---|---|
| Simen, Figura and Parker P.L.C. | $25,000.00 to $35,000 (depending of whether confirmation is contested) less amounts held in trust | Administrative |
| Kimberly Clayson | $5,000.00 (maybe higher if confirmation is contested) | Administrative |

16

**2.8.** **Total of all non-priority unsecured claims, including undersecured claims.**

The Claims listed in exhibit C are for description purposes only and not an admission by the Debtor or any other person. The Debtor reserve the right to contest the amount, classification, and priority of any Claim, and if applicable, any asserted security interest or Lien, or the priority or extent thereof. Nothing in the Plan shall be deemed an admission by the Debtor. Further information on Claims can be found by accessing the claims register on the Bankruptcy Court's website.

**2.9.** **Information regarding guaranteed debt or persons co-liable with Debtor on any debt.**

Debtor' Schedules set forth, on Schedule H of each set of Schedules, all co- debtor obligations and liabilities. The Debtor reserve the right to contest the amount of any Claim, and if applicable, any asserted security interest or Lien, or the priority or extent thereof.

**2.10.** **Plan Summary**

This Plan proposes to pay Creditors of Cost Less Distributing, Inc. from the Debtor' cash flow from operations and future income.

**ARTICLE III**
**CLAIMANTS THAT ARE NOT SUBJECT TO CLASSIFICATION AND ARE NOT ENTITLED TO VOTE ON THE PLAN: ADMINISTRATIVE AND PRIORITY CLAIMS**

**3.1** **Administrative Claims**

Known administrative claims in these cases are held by the Subchapter V Trustee Kimberly Ross Clayson, and the attorneys for the Debtor, Simen, Figura & Parker, PLC. The treatment of these claims is discussed below.

**3.2** **Expenses of Operations**

Expenses of Operations include all liabilities based on the ordinary course of business after the Petition Date, and Claims allowed pursuant to Section 503(b) of the Bankruptcy Code, including applicable tax claims. The Debtor does not believe any Section 503(b) claims exist.

3.2.1 Unless otherwise agreed to by the Holder of an Allowed

17

Administrative Claim and the Debtor, to the extent any Allowed Administrative Claim has not already been paid in full or otherwise satisfied during this Chapter 11 Case, each Holder of an Allowed Administrative Claim will (i) be paid any retainer and then in four (4) equal monthly installments, with the first payment due thirty (30) days after the Effective Date, and the following three (3) installment payments due on the same date of each month thereafter, or (ii) if the Allowed Administrative Claim is based on liabilities incurred by the Estate in the ordinary course of business after the Petition Date, it will be paid pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without further action by the Holder of such Allowed Administrative Claim.

       3.2.2   Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court or as provided herein, unless previously filed, requests for payment of Allowed Administrative Claims, except for any Professional Fee Claims against the Reorganized Debtor, must be filed and served on the Debtor on or before the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the Notice of Entry of the Confirmation Order. Holders of Allowed Administrative Claims that are required to file and serve a request for payment of such Allowed Administrative Claims that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Claims against the Debtor or their property, and such Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be filed and served on the requesting party by the Administrative Claims Objection Bar Date.

### 3.3     Professional Fee Claims.

The holders of Professional Fee Claims shall consist of, without limitation, the Professional Fee Claims, if and when allowed, and may include, without limitation Simen, Figura and Parker P.L.C., fees and costs, (ii) the Subchapter V Trustee's fees and costs.

       3.3.1  **Final Fee Applications.** All final requests for payment of Professional Claims must be Filed no later than thirty (30) days after the Confirmation Date. This provision does not impact any fees incurred should this case be reopened. After notice and a hearing in accordance **with** the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Fee Claims and expenses will be determined by the Bankruptcy Court and paid (i) from funds held in trust by any Professional, or in four (4) equal installments due on the first business day of the month after entry of a Final Order allowing such fees, and then continuing for the next three (3) consecutive months

       3.3.2  **Post-Confirmation Date Retention.** Upon the Confirmation Date, any requirement that Professionals comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date or to make any disclosures pursuant to Bankruptcy Rules 2014 and 2016 will terminate, and Debtor

shall employ and pay Professionals in the ordinary course of business.

**3.4    Priority Tax Claims.**

3.4.1    Debtor believes there are no Priority Tax Claims.  In the event a Priority Tax Claim is filed, the Holder of an Allowed Priority Tax Claim shall be entitled to receive, on account of its Allowed Priority Tax Claim, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, payment in cash of the outstanding amount of the Allowed Priority Tax Claim in four (4) equal monthly payments, with the first payment commencing sixty (60) days after the Effective Date and subsequent payments made on the same date of each of the three months thereafter.  For the avoidance of doubt, all taxes of the type entitled to priority under 11 U.S.C. Section 507(a) that have been assessed prior to the Petition Date are subject to this Section 3.4.Debtor reserve the right to continue or commence a challenge to any Priority Tax Claim through the claims objection process set forth in Article VIII of this Plan or through any appropriate adjudicative body with necessary jurisdiction, which challenge may include, but need not be limited to, a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax. The right to challenge these claims includes, without limitation, an objection to the assessment of Debtor' personal property that may or may not have been made by the respective taxing authority.

**3.5    Substantial Contribution Compensation and Expenses Bar Date.** Any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to Sections 503(b)(3) ,(4), and (5) of the Bankruptcy Code must File an application with the clerk of the Bankruptcy Court on or before the Administrative Claims Filing Date and serve such application on counsel for Debtor and other parties as may be directed by the Bankruptcy Court on or before such date, or be forever barred from seeking such compensation or expense reimbursement. The Court will determine any timely filed request for compensation or expense reimbursement made under this Section 3.5, and Debtor shall pay any Allowed amount in four (4) equal monthly installments, with the first payment commencing sixty (60) days after the Effective Date, and the following three (3) installment payments due on the same date of each month thereafter, unless otherwise agreed to in writing by Debtor and the claimant.

**3.6    Other Administrative Claims**. All other requests for payment of an Administrative Claim (other than as set forth in Section 3.5 of this Plan) must be Filed and served on Debtor' counsel by the Administrative Claims Filing Date, except that any Administrative Claim not already Filed and required to have been Filed before the Administrative Claims Bar Date is automatically disallowed. Any request for payment of an Administrative Claim pursuant to this Section 3.6 that is not timely Filed and served is automatically disallowed without the need for any objection by Debtor.  After the Effective Date, Debtor may settle an Administrative Claim without further Bankruptcy Court approval. Unless any Debtor objects to an Administrative Claim by the  Administrative

19

Claims Objection Bar Date (unless such objection period is extended by the Bankruptcy Court), the Administrative Claim will be deemed Allowed in the amount requested. In the event that a Debtor objects to an Administrative Claim, the Bankruptcy Court will determine the Allowed amount of the Administrative Claim.

## ARTICLE IV
## SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER THE PLAN AND THOSE IMPAIRED UNDER THE PLAN

The Plan provides for the treatment of Creditors of Cost Less Distributing, Inc. as follows with the first payment on each of these claims being due on the 1st of the month no less than sixty (60) days from the date of confirmation. Any party entitled to adequate protection shall receive that payment until the commencement of plan payments:

**4.1** **Class I.** Class I shall consist of the holders of Allowed Secured Mortgage Claims against Cost Less Distributing, Inc., which category is made up solely of Kay Financial, LLC. Kay Financial holds a mortgage secured by Debtor's warehouse located at 3302 Associates in Burton, Michigan, which was recorded on September 11, 2023 in the total amount of $1,150,000.00. It is the Debtor's position that the real property is worth less than the amount due on mortgage. Debtor proposes to "cram down" the mortgage pursuant to 11 U.S.C. §506 to a value of $600,000.00 at 10 percent interest, and to pay $12,854.46 per month to the creditor for 60 months. Creditor Kay Financial's objection to confirmation filed at docket 65 asserts in paragraph 5 that Debtor's proposal in the initial plan understated the value of the real property. Debtor's principals believe, based on their observations of nearby commercial property and the state equalized value, that the value may be less than $600,000.00, but understand that absent an agreement the value of 3302 Associates under Section 506 is an issue for this Court to determine. By way of background, since the initial confirmation hearing Cost Less and Kay Financial have met at Debtor's counsel's office, and engaged in ongoing communications, in diligent efforts to resolve the valuation issue but so far have not been successful. Debtor has located an appraiser and anticipates seeking this Court's approval of that appraiser's employment. Debtor's appraisal may be equal to, less than or more than $600,000.00, and if the value of the real property is ultimately determined by this Court following an evidentiary hearing, or resolved by stipulation, the monthly payment on the secured portion of Kay Financial's claim may be equal to, more than or less than the amount set forth in this paragraph. Upon the completion of these payments and all other obligations under this Plan the Kay Financial mortgage obligation shall be deemed discharged. The balance of Kay Financial's claim shall be treated as an unsecured claim.

**This Class is Impaired.**

**4.2    Class II.** Class II shall consist of fully secured, allowed claims against Debtor's accounts, accounts receivable, inventory and other personal property. This Class is made up of Velocity Capital Group, LLC and Rapid Finance. Velocity will receive monthly payments of $5,194.35 at 7 percent interest over 60 months.  Rapid will receive monthly payments of $2,970.1 at 7 percent interest over 60 months. In both cases, these payments shall satisfy the secured claims. Velocity voted in favor of confirmation, and its treatment is unchanged. As a result Debtor intends to rely on Velocity's prior vote unless Velocity votes differently in connection with this plan.

**This Class is Impaired.**

**4.3    Class III.** Class III consists of partially secured claims against Debtor's accounts and accounts receivable. This consists of Rocket Capital NY, LLC whose claim is crammed down to $110,000 based on the value of the Debtor's accounts and receivables at the time of filing less the previously filed claim of Velocity Capital Group. Rocket Capital shall receive $2,075.84 per month for 60 months at 7 percent interest in full satisfaction of its secured claim.

**This Class is Impaired.**

**4.4    Class IV.** Class IV shall consist of partially or wholly unsecured claims. Each Holder of Class IV Claims shall receive a Pro Rata distribution attributable to its Allowed General Unsecured Claim based on monthly payments each year by the Debtor from the Debtor's Projected Disposable Income for a period of 5 years. The first payment shall be the first day of the month not less than 60 days after the Effective Date. Such payments shall continue to be made monthly on the first day of each calendar quarter thereafter for a period of 5 years from the first payment. The payments herein are reduced both based on the feasibility concerns raised by the United States Trustee and the potential that Kay Financial's payment may increase. For the initial 24 months of payments each monthly plan payment shall total $1,000.00. For the next 24 months, the monthly payments shall increase to $3,000.00. Finally, during last 12 months of the plan, the monthly payments shall be $8,000.00 per month. This will result in a total, gross payment to unsecured creditors of $192,000.00

**This Class is Impaired.**

**4.5    Class V**: Class V consists of the equity claims of interest in Cost Less Distributing, Inc. Timothy Green and Matthew Ovadek shall retain their ownership interests in Cost Less Distributing.

**This Class is Unimpaired.**

# ARTICLE V
## EXECUTION AND IMPLEMENTATION OF THE PLAN

**5.1** Cost Less Distributing, Inc. shall be responsible for satisfying the Allowed Claims in accordance with the terms and provisions of this Plan. The Reorganized Debtor Cost Less Distributing, Inc. will retain control of and be responsible for all of Debtor's activities pursuant to this Plan after the Effective Date. Funding for the administration of the bankruptcy estates and of this Plan and for the actions necessary shall come from funds on hand.

**5.2** The Reorganized Debtor Cost Less Distributing, Inc. may pre-pay any Allowed Claim, other than Allowed Claims held by Insiders or Affiliates, at any time without penalty or liability for unmatured interest. The Reorganized Debtor may negotiate discounts in exchange for pre-payments. Upon payment by the Reorganized Debtor to any Allowed Claim Holder in the amounts required under this Plan or as otherwise agreed by the Allowed Claim Holder, the Reorganized Debtor will have no further obligation to the Allowed Claim Holder under this Plan, and the Allowed Claim Holder will have no further or continued rights or standing under this Plan.

## Voting and Acceptance of the Plan

**5.3** **Elimination of Vacant Classes.** Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily allowed by the Bankruptcy court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code.

**5.4** **No Further Approvals.** The transactions contemplated by the Plan shall be approved and effective as of the Effective Date without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtor.

**5.5** **Retention.** The Reorganized Debtor may retain professionals after the Effective Date to represent and assist the Reorganized Debtor in all aspects of its obligations and rights under this Plan or to otherwise assist the Reorganized Debtor. Without limitation, the Reorganized Debtor may retain professionals employed by the Debtor in the Chapter 11 Case.

**5.6** **Professional Fees.** Any services performed or expenses incurred by any Professional on behalf of the Reorganized Debtor with respect to the Chapter 11 Case after the Confirmation Date will be Administrative Claims, will be paid by the Reorganized Debtor and will not be subject to the prior review and approval of the Bankruptcy Court, after twenty (20) days' notice to the Reorganized Debtor, c/o Matthew Ovadek.

Notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, Bankruptcy Rule 2016, after the Confirmation Date, no Professional will be required to disclose payments from the Reorganized Debtor to the Bankruptcy Court or the United States Trustee. All fees and expenses of the Reorganized Debtor shall be billed directly to the Reorganized Debtor and the Bankruptcy Court shall review only that portion to which Reorganized Debtor objects. The Reorganized Debtor must pay the portion not objected to in accordance with the terms of the invoice.

**5.7** **Effectuating Documents**: Matthew Ovadek and Timothy Green, as the owners/shareholders of the Reorganized Debtor, subject to the other terms of this Plan, shall be authorized as of the Effective Date to execute, deliver, file, or record such financing statements, contracts, instruments, releases, and other agreements or documents, and to take such actions as may be necessary or appropriate on behalf of the Reorganized Debtor to effectuate and further evidence the terms and conditions of this Plan without further notice to or order, action or approval of the Bankruptcy Court.

## Preservation of Rights of Action:

**5.8** **Vesting of Causes of Action:** In accordance with Section 1123(b) of the Bankruptcy Code, all Causes of Action of the Debtor and the Debtor' Estates will be transferred to the Reorganized Debtor. The Reorganized Debtor shall retain and may (but are not required to) enforce all rights to commence, pursue, compromise and collect, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including, but not limited to, Avoidance Claims.

**5.9** **All Causes of Action are Specifically Reserved, whether or not specifically listed in the Plan:** Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, Exhibit, or a Final Order, the Debtor specifically reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, res judicata, estoppel (judicial, equitable or otherwise) or laches will apply to any of the Causes of Action upon, after or as a consequence of the Confirmation, entry of the Confirmation Order or the Effective Date.

**5.10** **Limited Modification of the Automatic Stay:** In order to allow these Causes of Action to be pursued, upon the Effective Date the Automatic Stay imposed by 11 U.S.C. § 362 shall be modified so that the Debtor are allowed to pursue the Causes of Action and so that the defendant(s) in said Causes of Action may assert any defenses or any other responsive pleading not subject to discharge or otherwise determined in this case, which they may have against the claims made. Nothing in this Plan constitutes a determination of the validity or potential damages relating to any Cause of Action.

## Termination of Subchapter V Trustee.

23

**5.12**    If the Plan is confirmed under Section 1191(a), the Subchapter V Trustee shall continue to exercise those powers and perform those duties specified in Section 1183 of the Bankruptcy Code through substantial consummation of the Plan, at which point her services shall terminate.

**5.13**    If the Plan is confirmed under Section 1191(b), the Subchapter V Trustee shall not be terminated until she has performed such duties as are described in Sections 1183 and 1194(b) of the Bankruptcy Code, and such other duties as he may have been assigned by the Bankruptcy Court prior to the Effective Date.

**Pre-Effective Date Injunctions or Stays**

**5.14**    All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Chapter 11 Case pursuant to Sections 105 or 362 of the Bankruptcy Code or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

**ARTICLE VI**
**EFFECT OF CONFIRMATION OF THE PLAN <u>ON CLAIMS AND INTERESTS</u>**

**6.1**    **<u>Discharge Under §1191(a)</u>**:  In the event this Plan is confirmed under Section 1191(a) of the Bankruptcy Code, the confirmation of this Plan will, and does hereby act as a full, total and complete settlement, satisfaction, discharge and release of all Claims of all Creditors against the Debtor and the Reorganized Debtor. Confirmation will also act as an injunction against all Creditors from taking any actions to collect or enforce Claims against the Debtor or the Reorganized Debtor except as set forth in this Plan. Except as otherwise provided in the Plan or the Confirmation Order, Confirmation shall, as of the Effective Date, discharge the Debtor from all Claims or other debts that arose before the Effective Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, and all debts of the kind specified in Sections 502(g), 502(h) or 501(i) of the Bankruptcy Code, in each case whether or not a Proof of Claim is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code.

**6.2**    **<u>Discharge Under §1191(b)</u>:**  In the event this Plan is confirmed under Section 1191(b) of the Bankruptcy Code, as soon as practicable after completion of Debtor' Payments due during the first five (5) years of the Plan, the Court shall grant the Debtor a discharge of all debts provided in Section 1141(d)(1)(A) and allowed under Section 503 of the Bankruptcy Code (the "Discharge Order").  Notwithstanding the foregoing, the court shall not grant the Debtor a discharge of any secured debt for which the last payment is due after the first five (5) years of the plan or (ii) a debt of the kind specified in Section 523(a) of the Bankruptcy Code.

**6.3**    **<u>Effect of Discharge.</u>**  Upon the Effective Date, if the Plan is confirmed under

24

Section 1191(a) or upon entry of a Discharge Order if the Plan is confirmed under Section 1191(b), and except as otherwise provided in the Plan or the Confirmation Order, all Persons and Entities shall be precluded from asserting against the Debtor, or their respective successors or property, any other or further Claims, demands, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all such Claims and other debts, interests, and liabilities against the Debtor pursuant to Sections 524 and 1192 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged debt.

      **6.4**    **Injunction**. Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, all Persons and Entities that have held, currently hold, or may hold Claims, Interests, Causes of Action or liabilities that are treated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor and Reorganized Debtor or their property on account of any such discharged Claims, debts, liabilities, or terminated Interests, Causes of Action, liabilities or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding based upon said discharged Claims, debts, liabilities, or terminated Interests, Causes of Action, liabilities or rights; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order based upon said discharged Claims, debts, liabilities, or terminated Interests, Causes of Action, liabilities or rights; (iii) creating, perfecting or enforcing any Lien or encumbrance based upon said discharged Claims, debts, liabilities, or terminated Interests, Causes of Action, liabilities or rights; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability or obligation due to Debtor or any one of them based upon said discharged Claims, debts, liabilities, or terminated Interests, Causes of Action, liabilities or rights; and (v) commencing or continuing any action in any manner, in any place that does not comply, or is not consistent, with the provisions of this Plan.

### ARTICLE VII
### PROVISIONS GOVERNING DISTRIBUTION

      **7.1**    **No Interest On Unsecured Claims**. Unless otherwise specifically provided for in this Plan or as otherwise required by Section 506(b) of the Bankruptcy Code, interest will not accrue or be paid on any General Unsecured Claim.

      **7.2**    **Delivery Of Distributions in General**. Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Allowed Interests will be made by Reorganized Debtor (a) at the addresses set forth on the Proofs of Claim Filed by the Holders of Claims or Interests (or at the last known addresses of such Holders of Claims or Interests if no Proof of Claim is Filed

or if Debtor has been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to Debtor after the date of any related Proof of Claim, or (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and Debtor has not received a written notice of a change of address. Distributions under the Plan on account of Allowed Claims will not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim will have and receive the benefit of the distributions in the manner set forth in the Plan.

**7.3** **Undeliverable Distributions and Non-Negotiated Checks.** If any distribution to a Holder of a Claim or Interest is returned as undeliverable, no further distributions to such Holder of such Claim or Interest will be made unless and until Debtor are notified of the then-current address of such Holder of the Claim, at which time all missed distributions will be made to the Holder of the Claim without interest. If checks issued by the Reorganized Debtor on account of Claims are not negotiated within one hundred and twenty days after the issuance of the check, the check will be null and void. Amounts in respect to undeliverable distributions and non-negotiated checks will be held by the Reorganized Debtor until the earlier of (i) when such distributions are claimed by the valid Holder of the Claim or (ii) ninety days after the check is returned or voided due to non-negotiation, after which date all such undistributed and non- negotiated amounts will revert to the Reorganized Debtor free of any restrictions and the Claim of any Holder or successor to such Holder with respect to the distribution will be deemed discharged and forever barred from seeking payment, notwithstanding federal or state escheat laws to the contrary. Nothing contained herein requires the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

**7.4** **Fractional Payments.** Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars are not required. Payment of fractions of dollars that would otherwise be distributed under the Plan will be rounded to the lower whole number of dollars.

**7.5** **Restrictions on Distributions.** Notwithstanding anything in this Plan to the contrary, Debtor are not required to make any distribution to a Claim Holder in an amount less than $10.00. In the event a distribution is less than $10.00, such distribution(s) shall be held until the next scheduled distribution date, and paid with such following distribution.

**ARTICLE VIII**
**OBJECTIONS TO CLAIMS**

**8.1** **Timing of Objections:** The Reorganized Debtor may object to the allowance of any Claim, whether listed on the Schedules filed by Debtor, or filed by any Creditor, on or before the later of (a) three months from the date of filing of any Proof of Claim or (b) three months after the Effective Date.

**8.2**   **Objections to Liens:** The Reorganized Debtor may object to any Lien or security interest within the time period set forth in Section 8.1 or after any attempt by a Creditor to enforce the Lien, except that Debtor may not file an objection to any Lien that is the basis of a Claim Allowed under the terms of this Plan.

**8.3**   **Claims**: Except as provided herein or otherwise agreed by Debtor in writing, any and all Proofs of Claim filed after the dates set forth in the "Notice of Chapter 11 Case" at docket 7 -- January 29, 2025 for general creditors or April 29, 2025 for governmental units shall be disallowed without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Date such late Claim has been held timely Filed by a Final Order. It is the responsibility of the Creditor holding any such late Claim to request that such late claim be held timely Filed.

**8.4**   **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, neither the Debtor, the Reorganized Debtor nor the Subchapter V Trustee shall be obligated to make any payments toward the disputed portion of a Disputed Claim; provided, however, that the Debtor or the Subchapter V Trustee, as applicable, may, at their discretion, pay any undisputed portion of a Disputed Claim in accordance with the terms of the Plan. To the extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed and any distribution withheld pending the resolution of such Claim shall be reallocated pro rata to the Holders of Allowed Claims in the same Class.

**8.5**   **Distribution after Allowance.** To the extent that a Disputed Claim becomes an Allowed Claim, distributions, if any, shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan and the Confirmation Order. As soon as practicable after the date that an order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Debtor or the Subchapter V Trustee, as applicable, shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan.

**8.6**   **Disallowed Claims.** Any Claim held by a Person or Entity against the Debtor, or any one or more of them, that has commenced a proceeding asserting a Cause of Action under Sections 542, 543, 544, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and the Holder of such Claim shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed shall continue to be disallowed for all purposes until such Cause of Action has been settled or resolved by Final Order and any sums due to the Debtor, or any of them, from such party have been paid.

**ARTICLE IX**
**MODIFICATION OF THE PLAN**

**9.1**   **Modification of Plan**. Except as otherwise provided in this Plan, Debtor may,

27

from time to time, propose amendments or modifications to this Plan prior to the Confirmation Date, without leave of the Bankruptcy Court. Subject to certain restrictions and requirements set forth in Section 1193 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modification set forth in the Plan, Debtor expressly reserve their rights to revoke or withdraw, or to alter, amend or materially modify the Plan, one or more times before the Confirmation Date. After the Confirmation Date, the Reorganized Debtor may, with leave of the Bankruptcy Court and upon notice and opportunity for hearing to the affected Creditor(s), remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or otherwise modify the Plan.

**9.2** **Effect of Confirmation on Modifications**. Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation of the Plan are approved pursuant to Section 1193(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**9.3** **Revocation or Withdrawal of the Plan.** Debtor reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If Debtor revoke or withdraw the Plan, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption, assignment, or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan, will be deemed null and void; and (3) nothing contained in the Plan will: (i) constitute a waiver or release of any Claims, Interests, or Causes of Action; (ii) prejudice in any manner the right of Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by Debtor or any other Person.

## ARTICLE X

## EXECUTORY CONTRACTS

**10.1** **Assumption or Rejection of Executory Contracts and Unexpired Leases**. Debtor has no executory contracts.

**10.2** **Rejection Claims.** Any Creditor who has a Claim as a result of the rejection of a contract shall have until thirty (30) days after the Effective Date to file a Proof of Claim asserting the rejection damages relating to the contract, failing which such Claim will be disallowed in its entirety. Creditors whose contracts are assumed or rejected under a Court Order entered before the Effective Date are required to follow the procedures set forth in the Court Order if they differ from the procedures set forth above.

**10.3** **Objections to Rejection Claims and Cure Claims.** The Reorganized Debtor may file an objection to any Proof of Claim filed in accordance with this Article and in

accordance with Article VIII.

## ARTICLE XI
## TITLE TO PROPERTY

**11.1** **Revesting of Assets**. Except as otherwise explicitly provided for in this Plan, on the Effective Date, all property held by the Estates (including all Causes of Action) will vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests of Creditors, except for the retained Interests of equity security Holders. As of and following the Effective Date, the Reorganized Debtor, as provided for under the terms of this Plan, may conduct the Debtor' activities and use, acquire, and dispose of property and settle and compromise Claims or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order.

**11.2** **Effect of Conversion**. In the event of a conversion of any of these cases to a Chapter 7 proceeding, all property of the Debtor or Reorganized Debtor, including property which will revest in the Reorganized Debtor pursuant to Confirmation of this Plan and all property acquired by the Reorganized Debtor subsequent to Confirmation, shall be property of the Chapter 7 estate, subject to the Liens and security interests granted under this Plan.

## ARTICLE XII
## JURISDICTION OF THE COURT

**12.1** **Jurisdiction**. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, including without limitation, jurisdiction with respect to:

**12.2** The classification of the Claim of any Creditor and the re- examination of Claims Allowed for purposes of voting, and the determination of such objections as may be filed to Claims of Creditors. The failure by Debtor to object to, or to examine any Claim for the purposes of voting, will not be deemed to be a waiver of any right to object to, or reexamine the Claim, in whole or in part. Furthermore, the fact that this Plan has provided a treatment for the benefit of a particular Creditor will not in any way be deemed to be a waiver of any right to object to or re-examine the Claim or any secured interest which secures such Claim, in whole or in part.

**12.3** The determination of all questions and disputes regarding title to the assets of the Estate, and all causes of action, controversies, disputes, or conflicts, whether or not

subject to action pending as of the Confirmation Date, between Debtor, or any one of them, and any other party.

     **12.4**     The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

     **12.5**     The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in aid of confirmation of this Plan.

     **12.6**     The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of Debtor or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

     **12.7**     The review and approval of all Professional Fee applications for services rendered before the Confirmation Date and the review of any Professional Fees for services rendered in connection with the Plan after the Confirmation Date to the extent that Debtor dispute all or a portion thereof.

     **12.8**     The entry of an order concluding and terminating these Cases. **Standing.** Plan Beneficiaries have standing to enforce their rights under this Plan or to seek relief in the event that any Person or Entity fails to comply with their obligations under this Plan.

**ARTICLE XIII**
**MISCELLANEOUS PROVISIONS**

     **13.1**     **Default.** Should a Beneficiary of this Plan believe that a default has occurred under the Plan as a result of Debtor's action or inaction, the Beneficiary shall send written notice of the alleged default by first class mail to the Debtor and its counsel. The Debtor shall have thirty five (35) days from the date of receipt of any such written notice of default to cure the alleged default. If the alleged default is not so cured, the Beneficiary who provided the written notice may file a motion to convert this case to a case under Chapter 7 of the United States Bankruptcy Code. The Court shall grant the Motion to allow for liquidation of the Debtor's non-exempt assets if the Beneficiary demonstrates and Debtor fails to refute that an uncured default under the Plan exists.

     **13.2**     **Immediate Binding Effect**. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon Debtor and any and all Holders of Claims and Interests (irrespective of whether any such Holders of Claims

30

or Interests failed to vote to accept or reject the Plan, voted to accept or reject the Plan, or is deemed to accept or reject the Plan), and all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan.

**13.3**    **Additional Documents**.  On or before the Effective Date, Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Debtor and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**13.4**    **Reservation of Rights**. Except as expressly set forth in the Plan, the Plan will have no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any of the Debtor with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests before the Effective Date.

**13.5**    **Successors and Assigns**. The rights, benefits and obligations of any Person named or referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of such Person.

**13.6**    **Service of Documents.**  After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor or the Reorganized Debtor must be sent by overnight mail, postage prepaid to:

Matthew Ovadek
3302 Associates Drive
Burton, MI 48529

**13.7**    **Entire Agreement.** Except as otherwise stated in this Plan, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**13.8**    **Nonseverability of Plan Provisions**. If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan

will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without Debtor' consent; and (3) nonseverable and mutually dependent.

**13.9    Closing of Chapter 11 Case**. Debtor shall, after the full administration of the Chapter 11 Case, File with the Bankruptcy Court, all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

**13.10    Waiver or Estoppel**. Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with Debtor, their counsel, or any other Person, if such agreement was not disclosed in the Plan or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

**13.11    Conflicts and Interpretation of the Plan**. Except as set forth in the Plan, to the extent that any provision of any order (other than the Confirmation Order) referenced in the Plan or any Exhibits, schedules, appendices, supplements, or amendments to any of the foregoing, conflict with or are in any way inconsistent with any provision of the Plan, the Plan will govern and control.

**13.12    Termination of Liens and Encumbrances**. Debtor and all parties-in- interest, including any Creditor, must execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan. This includes the execution by Creditors of any Uniform Commercial Code termination statement.

**13.13    Causes of Action; Standing**. Except as otherwise provided in this Plan, Reorganized Debtor has the right and authority to commence, continue, amend or compromise all Causes of Action available to Reorganized Debtor, the Estates or the Debtor-in-possession, including without limitation all Avoidance Claims whether or not those Causes of Action or Avoidance Claims were the subject of a suit as of the Confirmation Date.

Submitted by:                              Prepared by:
Cost Less Distributing, Inc.

                                           Simen, Figura and Parker, P.L.C.


/s/ Timothy Green_____
 By:    Timothy Green                      By: _/s/ Peter T. Mooney_____
 Its:    President                         Peter T. Mooney (P47012) 5206
                                           Gateway Centre, Suite 200
                                           Flint, MI 48507
                                            (810) 235-9000
/s/_ Matthew Ovadek_____              pmooney@sfplaw.com
 By:    Matthew Ovadek
 Its:    Vice President                    Dated:    March 21 2025


   Dated:    March 21, 2025